UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:09CV141-JHM

TRACY N. GERSTLER                                                                PLAINTIFF

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security                                   DEFENDANT

**MAGISTRATE JUDGE'S REPORT
AND RECOMMENDATION**

Before the court is the complaint (DN 1) of Tracy N. Gerstler ("plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. §405(g). The plaintiff is represented by attorney Mary Burchett-Bower. Both the plaintiff (DN 12) and the defendant (DN 13) have filed fact and law summaries. The district judge has referred this case to the undersigned magistrate judge to review the fact and law summaries and to submit a report and recommendation. 28 U.S.C. §636. By order entered on January 6, 2010 (DN 11), the parties were notified that oral arguments would not be held unless a written request therefore was filed and granted. No such request was filed.

On March 26, 2007, the plaintiff filed applications for disability insurance and supplemental security income benefits alleging that she became disabled on May 11, 2004 at age 29 (Tr. 66, 71). She alleged disability due to a herniated disc in her back and bipolar disorder (Tr. 109). Plaintiff's employment history includes work as a receptionist, college housekeeper, cashier, housekeeper at a summer camp, order filler/stocker at Amazon, temporary employment at a factory, waitress, and sales clerk (Tr. 110, 111, 115, 142-148). Administrative Law Judge Ronald M. Kayser ("ALJ")

conducted a hearing on November 12, 2008 in Campbellsville, Kentucky (Tr. 295). Plaintiff was present and represented by non-attorney representative Amy Burton. Also present and testifying was Jackie Rogers, a vocational expert.

The final decision of the Commissioner was rendered on April 8, 2009 by the ALJ. In support of the decision denying Title II and XVI benefits, ALJ Reynolds entered the following numbered findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2012.

2. The claimant has not engaged in substantial gainful activity since May 11, 2004, the alleged onset date (20 C.F.R. 404.1571 *et. seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairment: degenerative disc disease, lumbosacral spine, status post discectomy and fusion (20 C.F.R. 404.1520(c) and 416.920(c).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c), as follows: lift/carry 50 pounds occasionally, 25 pounds frequently; stand/walk 6 hours in an 8-hour workday; sit 6 hours in an 8-hour workday; no limits on abilities to push/pull; and avoid whole body vibration.

6. The claimant is capable of performing her past relevant work as order picker; waitress; assembly line worker; sales clerk; cleaner; and cashier. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from May 11, 2004 through the date of this decision (20 C.F.R. 404.1520(f) and 416.920(f)).

Administrative Record (Tr. 16-23).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision, which was denied (Tr. 7-9). Thus, the ALJ's decision became the final decision of the Commissioner. 42 U.S.C. §405(h).

## GOVERNING LEGAL STANDARDS

The Court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying or reversing that decision. 42 U.S.C. §405(g), sentence four. In exercising its "sentence four" jurisdiction, the Court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir. 1981). It has been described as a sufficient amount of evidence "to justify, if the trial went to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n.1 (6th Cir. 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must examine the evidence of record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir. 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir. 1986).

When conducting substantial evidence review, the Court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir. 1993).

To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act. To qualify for supplemental security income benefits (SSI), a claimant must file a Title XVI application, must have insufficient earnings and other financial resources, and must be under a disability as defined by the Act. The determination of disability is essentially the same for Title II and Title XVI purposes. Disability determination is a five-step sequential evaluation process, to-wit:

STEP 1: The claimant must not be engaged in substantial gainful activity.

STEP 2: The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir. 1985). Any physical or mental impairment that has more than a *de minimis* effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step 3. In addition, the "severe" impairment must

4

| | |
|---|---|
| | satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§404.1509 and 416.909. |
| STEP 3: | If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the Regulations ("the Listings"), a conclusive presumption attaches that the claimant is disabled. |
| STEP 4: | The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy. |
| STEP 5: | If the claimant makes a prima facie showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir. 1990). |

## DISCUSSION

This case was denied at the fourth step of the sequential evaluation process based upon testimony from a vocational expert (VE). The VE testified that an individual with the "medium" residual functional capacity summarized in Finding No. 5 above would retain the ability to perform the plaintiff's past relevant work as an order picker (characterized by VE as light and unskilled), waitress (characterized by VE as light and semi-skilled), assembly line worker (characterized by VE as medium and semi-skilled), sales clerk (characterized by VE as sedentary and unskilled), cleaner (characterized by VE as light and unskilled), and cashier (characterized as light and unskilled) (Tr.

5

321-323). The VE testified that a hypothetical individual with medium exertional abilities but needing to avoid vibration would be able to perform each of the jobs identified in plaintiff's past relevant work history. The VE also testified that all of the plaintiff's past relevant jobs would be precluded if the disabling opinions of Dr. Bland were given controlling weight (Tr. 324-325). The magistrate judge concludes that the ALJ's fourth-step denial decision is substantially supported by the vocational testimony. Accordingly, unless the plaintiff points the court to evidence of an additional vocationally-significant physical or mental limitation that is <u>not</u> contemplated by the foregoing VE testimony, the court should affirm the ALJ's denial decision. The plaintiff contends that the ALJ erred in failing to find her mental condition and migraine headaches to be severe impairments at step 2, the ALJ failed to give proper consideration and weight to the evidence from plaintiff's treating psychiatrist Dr. Bland, and the ALJ's physical residual functional capacity assessment finding is insufficient. Each of these specific contentions shall be considered in turn.

I.

The plaintiff's first contention is that "the ALJ errs in failing to find mental disorders and migraine headaches to be 'severe' impairments" (DN 12, p. 2). According to the plaintiff, she suffers from a severe mental impairment as is evidenced by Dr. Bland's assessment of her mental functioning in a report dated October 20, 2008 wherein he notes a history of bipolar disorder sometimes with rapid cycling that interferes with functioning. In this assessment (Tr. 290-292), Dr. Bland finds marked impairments in the plaintiff's ability to interact appropriately with supervisors and coworkers and in her ability to respond appropriately to usual work situations and to changes in a routine work setting. The plaintiff also contends that a severe mental disorder is confirmed in

the records of psychiatric admissions to Jane Todd Crawford Memorial Hospital in 2004 and 2006.[1] Unfortunately for plaintiff, these two admissions and the 2008 assessment by Dr. Bland constitute the total mental health evidence contained in the record. The May 2004 admission records indicate that plaintiff had stopped taking her psychiatric medications some two weeks prior (Tr. 154) and that her mental condition had worsened in that time. The September 2006 admission also includes a notation by Dr. Bland that plaintiff "doesn't follow through with outpatient treatment" (Tr. 165). Consistent with this statement is the lack of supporting follow-up treatment notes from Dr. Bland.[2] By December of 2006, plaintiff noted to another physician that she had discontinued taking Cymbalta for her mental condition because "she didn't need it anymore" (Tr. 173). At the hearing, the plaintiff testified that she sees Dr. Bland every other month for medication checks; he has not referred her for counseling nor recommended further inpatient treatment (Tr. 312-313).

It is not uncommon for a claimant to argue the ALJ erred in failing to find one of his or her other physical or mental conditions to be a "severe" impairment. In *Maziarz v. Secretary*, 837 F.2d 240, 244 (6th Cir. 1987), the Sixth Circuit found it unnecessary to decide this question because the ALJ determined that at least one of the claimant's conditions was "severe" and continued with the

---

[1] Initially, the Commissioner contended that there was no evidence of admission for psychiatric care on September 20, 2006. However, this court's review of the pertinent records contained in the original transcript reveal both a notation of "admit" by Dr. Bland (Tr. 162) as well as a document entitled "Admission Consultation" (Tr. 163). The plaintiff's sentence six remand request based upon the missing hospital records will be addressed separately in Section IV of this report.

[2] In a Request for Medical Advice, Social Security Examiner Joann Emberton notes on reconsideration that the plaintiff is alleging a worsening of depression and additional treatment with Dr. Bland. However, she notes that the agency has been unable to get these records on reconsideration. They were also requested at initial consideration and were never received. Tr. 225.

7

remaining steps in the disability determination. The Sixth Circuit reasoned since the ALJ "properly could consider" the claimant's non-severe condition in assessing whether the claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the failure to find that the condition constituted a severe impairment could not constitute reversible error. *Id*. Thus, if the holding in *Maziarz* is applied, the failure to find that the plaintiff's mental impairments constituted a "severe" impairment could not constitute reversible error. *Id*.

While the record supports two episodes of mental crisis resulting in psychiatric admissions to a hospital (apparently brought on by the plaintiff's own lack of follow through with her medication and mental health treatment), there is other evidence contained in the record that supports the ALJ's finding of a less than severe mental impairment. For example, the record indicates that the plaintiff maintains a variety of activities of daily living including driving, attending church occasionally, shopping, occasional swimming, caring for her teenage son, performing some household chores, watching television and reading. Additionally, she continued to work at several jobs after the alleged onset date of May 11, 2004 until March of 2007 (Tr. 118), and even attended school at Morehead (Tr. 284) for a semester during this time period (Tr. 300). The plaintiff has also failed to show that her mental impairment would be expected to last for twelve continuous months to satisfy the duration requirement. 20 C.F.R. §§ 404.1509, 416.909. Finally, the psychological consult and assessment by Dr. Maryman (Tr. 183-187) and opinions by state agency consultants Scher and Sillers (Tr. 188-200, 211-223) provide substantial evidence to support the ALJ's finding of nonsevere mental limitations. Plaintiff has also failed to demonstrate how she has been harmed by the failure to find her mental impairment "severe" within the meaning of the regulations. She has not established that but for this error she would have been found disabled at a subsequent step

in the sequential evaluation process. Accordingly, the undersigned concludes that the holding in *Maziarz* should be applied herein.

Regarding the assignment of error for failure to note migraines as a severe impairment at step 2, the record contains differing accounts of the frequency and severity of these headaches. The ALJ's finding that the migraines are reasonably controlled by medication is supported by the treatment records from Dr. Angeles (Tr. 277, 282) and the gap in treatment for migraines between September of 2006 and November of 2007 tends to support this conclusion. In sum, it cannot be said that there is no substantial evidence to support the ALJ's finding of a nonsevere mental limitation and nonsevere migraines. While this court may have weighed the evidence differently, the ALJ's findings at step 2 are supported by substantial evidence of record, comport with applicable law and are entitled to deference.

II.

Next the plaintiff argues that "the ALJ failed to give proper consideration and weight to the evidence from the plaintiff's treating psychiatrist" (DN 12, p. 4). As noted above, Dr. Bland rendered a report dated October 28, 2008 (Tr. 290-292), wherein he assessed marked limitations in the plaintiff's abilities to perform numerous work-related activities due to bipolar disorder. If given controlling weight, Dr. Bland's opinions would necessitate a finding of disabled; however, the ALJ declines to give more than "minimal weight" to Dr. Bland's opinions, noting:

> As for the opinion evidence, the Administrative Law Judge gives minimal weight to the medical source statement of the claimant's psychiatrist, finding it to have no objective support – no treatment notes, nothing for a period of four years. [Inserted FN 8: "The psychiatrist's own October 2008 report, addressing the question of when the identified limitations were first present, indicates they were "progressive over several months."] The doctor's own report also fails to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled, and the doctor did not specifically address this weakness. Additionally, the

9

> possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he sympathizes for one reason or another. Another reality that should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case (Tr. 22).

This argument invokes what is commonly known as the "treating physician rule." The courts have long held that the treating physician – especially one who has seen the patient over a period of time -- is in a unique position to evaluate the functional impact of an impairment on her or his patient, and the law recognizes the importance of that point of view by according deference to the opinions of treating physicians. In *Wilson v. Commissioner*, 378 F.3d 541 (6th Cir. 2004), the court again confirmed the weight ordinarily due the opinion of a treating physician. *Wilson* also underlined the fact that the courts are bound to hold the Commissioner to the requirements of 20 C.F.R. §404.1527(d)(2), which calls for the ALJ to state clear reasons for rejecting or for limiting the weight given the opinion of a treating physician. See also SSR 96-2p.

A treating physician's opinion, if uncontradicted, should be given complete deference. See, e.g., *Walker v. Secretary*, 980 F.2d 1066, 1070 (6th Cir.1992). A treating physician's opinion is entitled to controlling weight if the Commissioner finds "that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. S 404.1527(d)(2)(1999). In other words, the opinion of a treating physician need not be given *controlling* weight unless supported by clinical or diagnostic findings. See *Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir.1997); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir.1993); *Kirk v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984).

10

However, "in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference," even if that opinion does not qualify for *controlling* weight. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 242 (6th Cir. 2007).

The ALJ's decision to reject Dr. Bland's disabling assessment is supported by substantial evidence in the record. More specifically, the ALJ's rejection of Dr. Bland's opinions is supported by the lack of supporting evidence of a disabling mental condition. This position is further supported by the lack of evidence of plaintiff's treatment with Dr. Bland, or any other healthcare professional during the time period in which she claims disability for bipolar disorder. Furthermore, it appears that plaintiff was able to continue working at various jobs during her alleged disability period. Even though the wages resulting from this work did not rise to the level of SGA, these work episodes tend to support the non-disabling nature of the plaintiff's mental condition during the period in question. In sum, the ALJ's rejection of the disabling opinions of Dr. Bland is supported by substantial evidence and will not be disturbed by this Court.

III.

Finally, the plaintiff argues that "the physical residual functional capacity assessment finding is insufficient" (DN 12, p. 6). The plaintiff alleges that the ALJ's failure to include a limitation on "extremely heavy lifting and bending" (a limitation assigned by the plaintiff's treating neurosurgeon some six months after a lumbar fusion at Tr. 267) in his RFC findings was error. It is not clear that this post-operative follow-up limitation is intended to be a permanent restriction on the plaintiff's activities. In other words, it is not clear that this limitation to avoid bending due to post-op recovery would satisfy the duration requirement of lasting for a continuous period of at least 12 months, 20 C.F.R. §§ 404.1509, 416.909. Hence, the limitation was properly omitted from the hypothetical

11

posed to the VE. In addition, there were jobs identified that the plaintiff could still perform if one were to include a restriction on bending; plaintiff noted her previous jobs of waitress and assembly line worker did not require bending or stooping (Tr. 143-4, 146-7). And as pointed out by the Commissioner, the Dictionary of Occupational Titles identifies the plaintiff's former job of cashier as requiring no stooping or crouching (DN 13, p. 12). The undersigned finds no reversible error in the ALJ's RFC assessment.

IV.

In her reply to the defendant's fact and law summary (DN 15), the plaintiff notifies the court that the plaintiff was awarded benefits in a subsequent application, and requests a sentence six remand because the September 2006 psychiatric hospitalization records contained in the administrative record from Jane Todd Crawford Memorial Hospital are incomplete. This issue is raised by plaintiff, in part, in response to the Commissioner's assertion in his fact and law summary that there is no evidence of actual admission to the hospital from the September 2006 episode. As noted herein-above, the magistrate judge concluded from review of the evidence contained in the record that there was in fact a September 2006 psychiatric admission. Nonetheless, the plaintiff contends that the ALJ failed to uphold his obligation to develop a full and fair record, and seeks a sentence six remand. In response, the Commissioner (DN 16) objects to the plaintiff's sentence six request, noting that the evidence in question is not new and material, and there exists no good cause for not previously submitting it.

The court can consider this new evidence which was not before the ALJ at the time of the administrative decision for the limited purpose of determining whether to remand the case to the Commissioner for further administrative proceedings, *Cline v. Commissioner of Social Security*, 96

F.3d 146, 148 (6th Cir. 1996); *Faucher v. Secretary*, 17 F.3d 171, 174-5 (6th Cir. 1994). This type of remand, under sentence six of 42 U.S.C. §405(g), is premised on new evidence coming to light that was not available to the claimant at the time of the administrative proceeding and that might have changed the outcome of the administrative proceeding. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). Notably, the party seeking a sentence six remand has the burden of demonstrating the new evidence is material and that good cause exists for not previously presenting it to the Commissioner. *Faucher,* 17 F.2d at 174-175. Here the plaintiff has not satisfied the burden of demonstrating either that the evidence is new (it was presumably available from the hospital as early as September of 2006), material, or that good cause exists for the failure to previously include it in the record. The court remains mindful that it is the plaintiff who bears the burden of establishing proof of disability, and if the records were incomplete, that matter could have been addressed to the ALJ at the time of the hearing. Because the plaintiff has not met the requisite burden, the undersigned concludes that a remand pursuant to sentence six of 42 U.S.C. §405(g) is not appropriate.

## RECOMMENDATION

For the foregoing reasons, the undersigned concludes that the Commissioner's findings are supported by substantial evidence and **RECOMMENDS** that the complaint be **DISMISSED**.

NOTICE

Pursuant to 28 U.S.C. §636(b)(1), as amended, any party shall have a period of fourteen (14) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within fourteen (14) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections. A period of three days shall be added to each fourteen (14) day period above pursuant to Fed.R.Civ.P. 6(d), for a total of seventeen (17) working days.

The court shall not conduct a de novo review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah KY 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).